CITY OF CHICAGO v. MICHIGAN, I. & I. LINE.

(Circuit Court of Appeals, Seventh Circuit.   October 8, 1912.)

No. 1,875.

NAVIGABLE WATERS (§ 20*)—BRIDGES—INJURY TO VESSEL FROM OPERATION OF DRAW.

Evidence *held* to support a finding that an injury to a vessel by being struck by the draw of a bridge, which was swung past the center as she was passing through, was due solely to the gross negligence of the bridgetenders employed by the city, and that the city was liable for the entire damage, even though the master of the vessel, in the excitement caused by the reckless mismanagement of the bridge, may not have taken the wisest action.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73–99; Dec. Dig. § 20.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

Suit in admiralty by the Michigan, Indiana & Illinois Line, owner of the steamer Marion, against the City of Chicago. Decree for libelant, and respondent appeals. Affirmed.

Appellee, sole owner of the steamer Marion, filed its libel against appellant on December 16, 1910, to recover damages suffered by it, by reason of a collision of the said steamer with the Lake Street bridge, Chicago, Ill., on March 31, 1910. At 5 o'clock in the morning of that day the steamer, laden with a cargo of salt and bound up the Chicago river, was struck twice by the Lake Street bridge, which first swung into her stern, with the result hereinafter set out, and then, rebounding (or forcibly propelled by the bridgetender, the evidence does not clearly disclose which), swung into the steamer on her starboard side forward, carrying away the pilot house, texas, lamp screens, destroying the signals, and wrecking whatever she carried forward in line with the bridge, and disabling the steering gear.

It is conceded that the steamer blew her whistle while at the usual distance from the bridge—somewhere from 400 to 600 feet away. At that time her captain, Nelson, was in command, on top of the pilot house; the mate, Thorsen, was on the deck, forward of the pilot house; Peterson, the lookout, was aft on the starboard side; and the wheelman, De Sormier, was at his post. The steamer was proceeding at the rate of three miles an hour with the current. Nothing appears in the record with regard to the position of the bridge signals. The captain testifies that after the whistle was blown he heard the bridge bell ring. The day was clear, except for the usual smoky condition at the river at 5 o'clock a. m. The bridge was closed when the signal was blown. As the vessel advanced, the east end of the bridge was swung to the south. The vessel passed into the east draw. It appears from a preponderance of the testimony that the end of the bridge which had spanned the west

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

draw, after a momentary rest at the north center protection, swung by it, and started to carry away the shrouds on the aft spar on the starboard side, the smoke guys, ventilator on boiler house, engine room skylights, dining room skylight, water tanks, boat davits, lifeboat, and canvas on cabin roof. The rear-end collision shoved the steamer onto the spile at the street. Then the engine was stopped and the steamer backed, to disentangle the bridge and steamer. After being released, the bridge began to swing back past the center protection, toward the west, and kept on swinging. In the meantime, the steamer had been sent ahead slowly. The bridge end, which was at first the east end, was then swung so far to the eastward from its center protection position that it struck the forward part of the steamer, as above stated. The spanked and cuffed steamer was practically dismantled.

The damages claimed in the libel amount to $5,000.

For the city, one witness, Officer Foley, was introduced, who testified that the bridge at no time rested over the center protection, but kept on swinging. The city also introduced sections 992, 993, and 994 of the ordinances regulating bridgetenders and vessels in such case, which read as follows, viz.:

"992. Vessel Signals.—The commissioner of public works is hereby required to provide and maintain at the several bridges over the Chicago river and its branches and the Calumet river, in the best and most practicable manner, vessel signals as required by this article.

"993. Signals Prescribed.—Each signal shall be a ball of suitable material of red color for use in the day time, and shall be not less than twenty-four inches in diameter. The signal for the night time shall be a red lantern of such size and so placed and arranged, when elevated, as to be easily seen up and down the river and the street.

"994. Duty of Vessels—Penalty.—It shall be unlawful for the owner, officer or other person in charge of any vessel in transit upon the Chicago river and its branches, or the Calumet river or any part thereof, to attempt to navigate any such vessel past any of the bridges over said river or branches while said signals are elevated, or while the said bridges or any of them may be opening or closing."

It also set up paragraph 8 of section 1015 of the city ordinances reading: "Vessels exceeding two hundred tons navigating the Chicago Harbor shall not proceed at a speed greater than four miles per hour."

The court found for the libelant. On reference had, the commissioner fixed the damages at the sum of $3,400.11, which finding was approved by the court, from which decree appellants have taken this appeal.

The errors assigned are: That the court erred in holding that the city was negligent and solely at fault, and not the vessel; that the court erred in not holding that the vessel's injury was caused by the violation of the city ordinance; that the court erred in not holding that the vessel was negligently navigated; that the court erred in not dismissing the libel or dividing the damages.

William H. Sexton, Corp. Counsel, of Chicago, Ill. (Charles M. Haft, Asst. Corp. Counsel, A. J. Hopkins, and D. J. Peffers, all of Chicago, Ill., of counsel), for appellant.

Charles E. Kremer, of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The city undertakes no defense of its servant, the bridgetender, nor of the manner in which the bridge was manipulated, but sets up the vessel's failure to comply with the city ordinance as to speed, signals, and entering a draw, above set forth. We are unable to discover from the record any culpable negligence on the part of the vessel. She was well within the ordinance speed limit. The defendant's evidence and reasoning fail to demonstrate that she entered the draw before the bridge

was centered on the center protection, or while the bridge was open-ing. On the other hand, the city's negligence was gross.

Defendant's contention that, in the absence of proof upon the subject, the court will assume that the danger signal was set, is without merit. The very fact that the bridge was opened in response to the Marion's whistle rebuts any presumption, were any raised, that there existed any such condition as called for the lifting of the closed or any other stop signal. This record calls for no consideration whatever of the defense that the danger signals were not obeyed. That in the excitement and alarm caused by the reckless mismanagement of the bridge, the officer should have done or failed to do the wisest thing, in no way relieves the city from the result of the carelessness of its servants. The E. A. Packer (C. C.) 49 Fed. 92; The Blue Jacket, 144 U. S. 371, 12 Sup. Ct. 711, 36 L. Ed. 469. A party may not precipitate an alarming situation, calling for extraordinary skill and prudence, and hope to escape liability for the injury done by question-ing the conduct of the imperiled parties under the sudden strain of the movement. An ordinarily prudent man is one who meets effi-ciently the ordinary duties of his position. The acts of the officers of the Marion in no way fell short of their obligation to their owners and to the city. The liability of the city under the facts of the case is clear.

The decree of the District Court is affirmed.